Filed 3/18/25  P. v. Hinton CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>DANIEL DESHAWN HINTON,<br><br>　　Defendant and Appellant. | B330407<br><br>(Los Angeles County<br>Super. Ct. No. BA373704-01) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Daniel Deshawn Hinton appeals from the superior court's order denying his petition for resentencing under Penal Code section 1172.6 (former section 1170.95)[1] following an evidentiary hearing. Hinton argues substantial evidence does not support the court's ruling that he could still be convicted of murder and attempted murder under current law. We affirm.

## RELEVANT FACTUAL BACKGROUND

A. *Prosecution*

   1. *The Crimes*

In 2010, Matthew Butcher (Butcher) was a manager and Urban Jones, Jr. (Jones) was an armed security guard at the Higher Path Holistic Care Dispensary (Higher Path), a medical marijuana dispensary in Los Angeles. Higher Path had a surveillance system that recorded activity both inside and outside the dispensary. Patients had to ring the doorbell at the locked front door, and then the security guard would open the door and let them into the reception area. If the patient presented a proper medical marijuana license, an employee in the buying area would press a buzzer to open the door to the buying area, where the employee would assist the patient.

Higher Path kept a computer database of its patients. Hinton, whom Jones knew as "Scooter," was a registered patient who had been at the dispensary five or six times. Hinton's cousin

---

[1] Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) All undesignated statutory references are to the Penal Code.

Raymond Lemone Easter (Easter)[2] was also a registered patient and had been at Higher Path with Hinton four or five times.

On June 24, 2010, Jones let a man he did not recognize into the reception area. The man pulled out a gun and pointed it at Jones' face. He took Jones' gun and ordered Jones and Butcher to lie on the floor, which they did. He then took the remote control from Jones and unlocked the front door. Hinton and Easter came in, both carrying guns.

The first man ordered Jones to take him to the surveillance system. Jones took him to the back office where the man forced him to remove the surveillance cameras and recordings. Meanwhile, Hinton and Easter held Butcher at gunpoint in the reception area. The first man then called out for someone to retrieve the office computer. Easter came to the back office, punched Jones in the eye, threw him against the back door, and repeatedly threatened to kill him.

The first man and Easter took Butcher to the back office and ordered Butcher to open the safe, and he did so. They removed about three to five pounds of marijuana and a cash box containing $18,000 from the safe. They rejoined Hinton in the buying area, where Easter ordered Jones and Butcher to lie face down on the floor.

Hinton went to the reception area and made a call from Butcher's cell phone, telling someone, " 'Hurry up. Hurry up.' "

Jones heard the front doorbell ring, and then heard Hinton tell the person at the front door "that we were busy and to come back in an hour." Easter came into the buying area, took

_____

[2]    Easter was Hinton's codefendant at trial. By separate order dated March 10, 2025, we affirmed the denial of Easter's section 1172.6 petition.

3

Butcher's keys, threatened to kill him, and kicked him in the stomach.

Jones heard a car pull into the driveway next to Higher Path. The first man, Easter, and Hinton gathered all the items they had stolen—the marijuana, the money, the computer, the DVR, the cell phone, patient files, and Butcher's flash drive, which contained an electronic copy of the patient database and patient files—and put them in trash bags. Then the three men carried the bags out the back door.

Holding a gun, Easter came back through the back door and returned to the area where Jones and Butcher were lying on the floor. Jones heard a gunshot and realized he had been shot in the head. A few seconds later he heard a second gunshot, and Butcher stopped moving. Jones exited out the front door.

Sarah Flores (Flores), who lived nearby, heard gunshots and ran outside to the front of Higher Path. She saw Jones holding his head and trying to make a call on his cell phone. Jones said, " 'They robbed us. Scooter and the guys robbed us. They come to the shop all the time.' " With Flores's assistance, Jones called his mother and told her, " 'Scooter and three other . . . guys robbed us. They live in the apartments next to the laundromat. They had everything. I told him not to shoot me.' "

Flores flagged down a patrol car. Jones told Detective Michael Arteaga of the Los Angeles Police Department (LAPD) that "Scooter" shot him. Paramedics arrived and transported Jones to the hospital. Jones survived, but Butcher died from a gunshot wound to his head.

2. *The Investigation*

LAPD Detective James King spoke to Jones in the hospital. Jones described three suspects. The first was a stocky man he

had never seen before.  The second was Scooter, whom Jones had seen at Higher Path several times before.  The third was Easter, whom Jones also had seen at Higher Path on previous occasions. Jones said Easter shot him.

B.    *Defense*

Jones' mother, Victoria McCullough, testified that when Jones called her on June 24, he did not identify who shot him. When she spoke to him in the hospital, he said "there were three male Blacks that all had guns.  Scooter was there.  There was a male Black with braids that . . . shot him."  However, according to Detective King, McCullough told him that Jones said Scooter shot him.

Cory Couch also worked as an armed security guard at Higher Path.  He visited Jones in the hospital on June 26.  Jones told him that Scooter stole his gun, held the gun to Jones' head, and said, " 'I'm going to kill you.  I'm going to blow your head off.' "  However, Jones did not know if Scooter was the one who shot him.  Jones also said that Scooter's girlfriend drove the getaway car.

## PROCEDURAL BACKGROUND

In 2013, a jury found Hinton guilty of first degree murder of Butcher (§ 187, subd. (a)) and attempted willful, deliberate, and premeditated murder of Jones (§§ 187, subd. (a), 664).[3]  The jury found true a felony murder special circumstance (§ 190.2, subd. (a)(17)) and that in the commission of the murder and attempted murder, Hinton personally used a handgun

---

[3]     Easter was a codefendant.

(§ 12022.53, subd. (b)).  We affirmed the judgment on appeal.
(*People v. Hinton et al.* (Aug. 24, 2015, B253708) [nonpub. opn.].)

In 2019, Hinton filed, in pro. per., his first petition for resentencing under former section 1170.95.  After appointing counsel for Hinton and holding a prima facie hearing, the superior court denied the petition in 2020.  Hinton timely appealed, and his counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436, raising no arguable issues on appeal.  Because Hinton did not file a supplemental brief, under *People v. Serrano* (2012) 211 Cal.App.4th 496, 503, we dismissed his appeal as abandoned.  (*People v. Hinton* (Aug. 13, 2020, B304929).)

In 2021, still in pro. per., Hinton filed a second petition for resentencing under former section 1170.95.  The superior court summarily denied the petition, finding Hinton was procedurally barred from filing a second petition.[4]  Hinton did not appeal the court's denial order.

In 2023, Hinton filed, in pro. per., the instant petition for resentencing under section 1172.6.  The court appointed counsel for Hinton, issued an order to show cause, and held an evidentiary hearing.  The clerk's transcript from Hinton's direct appeal and the trial transcript were admitted into evidence.[5]  Hinton attempted to introduce the transcript from Easter's

---

[4]      We augment the record on our own motion with the superior court's minute order from August 10, 2021.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

[5]      Although these transcripts were not transmitted to this court as part of the record on appeal, we augment the record with the transcripts on our own motion.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

section 1172.6 evidentiary hearing, but the court excluded it as inadmissible hearsay.  No witnesses were called.

The court denied the petition, finding beyond a reasonable doubt Hinton was guilty of both murder and attempted murder as a direct aider and abettor who acted with the intent to kill.[6] The court found that while Hinton "did[ not] shoot the two people," "was[ not] the leader," and "was[ not] present [inside the dispensary] when the shooting occurred," he "shared Easter's intent to kill" and facilitated the murder and attempted murder. Specifically, the court determined the following circumstances were relevant:  Hinton was armed; he "witnessed Easter being violent"; he witnessed Easter say "half a dozen times, 'I should kill you' "; he helped "remove the surveillance equipment and cameras so they couldn't be identified"; and he witnessed his cohorts tie up the victims[7] and place them on their stomachs on the floor.  Further, the court found particularly important that "both . . . Butcher and . . . Jones knew and had seen . . . Hinton as a client at the Higher Path Dispensary."  Based on those circumstances, the court concluded "the plan was to execute the witnesses" and "eliminate any identification of the robbers."

Hinton timely appealed.

---

[6]     The court further determined that, as to the murder, Hinton was guilty under a theory of felony murder as a major participant in the underlying robbery who acted with reckless indifference to human life.

[7]     We found no evidence in the record that the victims were tied up.

**DISCUSSION**

A.    *Section 1172.6*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and narrowed the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (*id.*, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2.  (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843.)  Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775) subsequently clarified the amendments to sections 188 and 189 also applied to attempted murder convictions.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 544.)

SB 1437 also provided a procedure (codified in section 1172.6) for "[a] person convicted of felony murder[,] murder under the natural and probable consequences doctrine or

8

other theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine" to petition the superior court to vacate the convictions and be resentenced on any remaining counts if the petitioner could not now be convicted of murder or attempted murder because of the changes to sections 188 and 189. (§ 1172.6, subd. (a).) The resentencing procedure begins with the filing of a petition containing a declaration that all requirements for eligibility are met. (§ 1172.6, subd. (b)(1)(A); *Strong*, *supra*, 13 Cal.5th at p. 708.) The trial court must then determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)-(c); *Strong*, at p. 708.)

If the petitioner has made this prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the convictions and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At the evidentiary hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (*Id.*, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*)

On appeal from an order denying a petition under section 1172.6 after an evidentiary hearing, we apply the substantial evidence standard of review. (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270 (*Montanez*); *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.) " '[W]e . . . " ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a

9

rational trier of fact in finding [the necessary fact] beyond a reasonable doubt." ' " . . . While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt.' " (*People v. Pittman* (2023) 96 Cal.App.5th 400, 414; see *Montanez*, at pp. 270-271.) " ' "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' " (*People v. Navarro* (2021) 12 Cal.5th 285, 339; see *Montanez*, at p. 271.)

B.      *Substantial Evidence Supports the Superior Court's Finding Hinton Directly Aided and Abetted, with the Intent To Kill, Murder and Attempted Murder*

1.      *Relevant legal principles*

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) Malice "may be express or implied." (§ 188, subd. (a).) "It is express when there is a manifest intent to kill." (*Gentile*, *supra*, 10 Cal.5th at p. 844; see § 188.) " 'Attempted murder requires the specific intent to kill,' " like express malice murder, " 'and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.)

"A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." (CALCRIM No. 400; see § 31.) "[A]ider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and

10

abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)  As to the means rea element, the defendant must not only know the direct perpetrator's intent but also share that intent.  (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)  Thus, to be guilty of directly aiding and abetting express malice murder and attempted murder, the aider and abettor must share the direct perpetrator's intent to kill.  (See *ibid*.)

Aiding and abetting may be shown by circumstantial evidence.  " 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)  Motive is also a relevant factor.  (See *People v. Smith* (2005) 37 Cal.4th 733, 741 ["evidence of motive is often probative of intent to kill"].)

Because a direct aider and abettor of murder and attempted murder shares the criminal intent of the perpetrator, he or she is ineligible for section 1172.6 resentencing relief as a matter of law.  (*Gentile*, *supra*, 10 Cal.5th at p. 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder, because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 931 ["Senate Bill 1437 did not change accomplice liability for murder under direct aiding and abetting principles.  [Citation.]  'One who directly aids and abets another

11

who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.' "].)

2. *Analysis*

Hinton challenges the superior court's findings that he shared Easter's intent to kill Butcher and Jones and that his acts assisted Easter in committing the murder and attempted murder.[8]  He points to evidence that he did not "explicitly" assault or threaten the victims; was not present during the shootings; prevented a customer from entering the dispensary during the robbery; and made a phone call, telling someone, "Hurry up.  Hurry up."  This evidence, he claims, "suggest[s] an intention to manage the situation with minimal escalation" and contradicts the superior court's findings.  We are not persuaded.[9]

By pointing to evidence that would support a contrary conclusion, Hinton misconstrues the substantial evidence standard of review.  (See *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1379.)  A defendant "does not show the evidence is insufficient by citing only his own evidence, or by arguing about what evidence is not in the record, or by portraying the evidence that is in the record in the light most favorable to himself."

---

[8]    Hinton does not dispute that Easter, with the intent to kill, murdered Butcher and attempted to murder Jones.

[9]    Hinton also contends the superior court erred in finding him guilty of murder under a felony-murder theory as a major participant in the underlying robbery who acted with reckless indifference to human life.  Because we conclude there is substantial evidence of Hinton's guilt for the murder under a different and still-valid theory (direct aiding and abetting express malice murder), we need not discuss the superior court's findings regarding the felony-murder theory.

(*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Rather, under the substantial evidence test, " 'we accept reasonable inferences in support of the judgment and do not consider whether contrary inferences may be made from the evidence.' " (*People v. Cunningham* (2016) 244 Cal.App.4th 1049, 1056; see *People v. Cuevas* (1995) 12 Cal.4th 252, 261 ["The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence" ' "].)

Reviewing the evidence in the light most favorable to the superior court's determination, Hinton's presence at the scene of the crime, companionship with Easter, and conduct before and after the crime, as well as evidence of Hinton's motive, all support the conclusion he not only was aware of Easter's intent to kill but also shared that intent and acted to assist Easter in his commission of the murder and attempted murder. (*People v. Nguyen*, *supra*, 61 Cal.4th at p. 1054; *People v. Smith*, *supra*, 37 Cal.4th at p. 741.)

First, a reasonable trier of fact could infer that Hinton and Easter shared a common purpose to kill Butcher and Jones given Hinton and Easter's close companionship. They were cousins who arrived at the dispensary together. They also appeared to work as a team—they played separate, but complementary roles: Hinton guarded Butcher at gunpoint while Easter gathered items; they bagged stolen items together; and they carried the items out of the dispensary together. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599 [in deciding whether defendant aided and abetted murder, court considered that defendant was the actual perpetrator's brother]; cf. *People v. Lara* (2017) 9 Cal.App.5th 296, 322 [companionship factor was "a wash"

13

because while defendants were "gang member companions" of actual perpetrator, the evidence suggested the defendants "were loyal to each other before they were loyal to [the actual perpetrator]" and one of the defendants expressly discouraged the actual perpetrator in committing the crime by telling him to calm down].)

Second, Hinton was inside the dispensary during the entire robbery, putting him in a position to witness and appreciate Easter's intent to kill. Hinton would have witnessed Easter punch Jones, kick Butcher in the stomach, and repeatedly threaten to kill both Jones and Butcher.[10] Although using threats or force is inherent in a robbery (§ 211) and does not necessarily, on its own, lead to a reasonable inference that all participants know and share the perpetrator's intent to kill, such an inference is reasonable here in light of the other probative factors. (Cf. *People v. Underwood* (2024) 99 Cal.App.5th 303, 314 [holding it was not reasonable for court to infer that actual perpetrator's threat to victim of robbery, " 'give me the wallet or I'll kill you,' " showed defendant knew and shared perpetrator's intent to kill "in light of other facts," including the lack of

---

[10]  Even if Hinton was not present in the same room as Easter when Easter exhibited this violence, the court could reasonably infer, based on Jones' testimony, that Hinton heard Easter's physical violence and threats. Jones testified that while he was in the back area with the unidentified man and Easter was in the buying area, the unidentified man "called out for someone to come" to the back area and "out of nowhere" Easter arrived. Jones also testified that while he was in the buying area and Hinton was in the reception area, he heard Hinton say, " 'Hurry up. Hurry up.' " Thus, the court could reasonably infer that the dispensary was small enough for sound to travel between rooms.

14

evidence that (1) defendant knew perpetrator had a weapon, (2) there was "any motive other than to obtain money," and (3) there was companionship between defendant and perpetrator].)

While the court found Hinton was not inside the dispensary during the shooting, the court reasonably inferred Hinton was in the getaway car "just outside" the dispensary, waiting for Easter. And, because the evidence showed the getaway car was in the dispensary's driveway, close enough for Jones to hear it, the court also reasonably inferred that Hinton was close enough to the shooting to hear the gunshots . Hinton's presence at every stage of the crimes supports the court's finding that he aided and abetted the murder and attempted murder with the intent to kill. (See *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1066 [substantial evidence supported the defendant's conviction for murder under a direct aiding and abetting theory where defendant drove the shooter to the scene of the shooting; the shooter's gun "would have been very conspicuous when carried [in the car]"; before the shooting, defendant and the shooter surveilled the scene; defendant waited in the car while the shooting took place; and defendant drove the shooter away afterwards]; *In re Gary F.* (2014) 226 Cal.App.4th 1076, 1081 [even though defendant did not go inside house where accomplice committed burglary, substantial evidence supported conclusion defendant was direct aider and abettor given he waited nearby, and he and the actual perpetrator "were companions acting in concert"].)

Third, Hinton's conduct before and after the shootings further supports the superior court's findings. Before the shootings, Hinton was armed with a gun and according to

15

Couch's testimony, Hinton pointed Jones' gun at Jones' head, threatening to kill him. By using a gun, Hinton "considered the possibility of a violent encounter." (*People v. Lee* (2011) 51 Cal.4th 620, 636 [evidence defendant brought a loaded handgun "makes it ' "reasonable to infer that he considered the possibility of homicide from the outset" ' "].) His "verbal expressions of malice made so close in time to the shooting" likewise supported the finding he harbored an intent to kill. (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1627.) In addition, Hinton acted as a lookout, turning away a potential patient at the front door, and helped bag and remove items from the dispensary. (See *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [watching for others who might approach is a "textbook example of aiding and abetting"].) After the shootings, Hinton fled with Easter and did nothing to help the victims. Thus, his actions, both before and after the shootings, encouraged the murder and attempted murder and demonstrate an intent to kill.

Finally, a reasonable factfinder could infer from the evidence that Hinton shared Easter's motive to kill Butcher and Jones to prevent them from naming Hinton and Easter as the robbers. Hinton and Easter did not wear masks at any point even though Jones, and presumably Butcher, knew them as Higher Path patients. And before Hinton left the dispensary, he helped take the items that could identify the robbers, including the entire surveillance system, computer, and patient files. Because Hinton and Easter did not attempt to hide their identities and made a point of removing anything that could identify them as robbers, the court reasonably concluded that both Hinton and Easter intended to leave no witnesses alive. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1019 [jury could

infer defendant killed victim to avoid detection for the crimes he committed against her].)  Substantial evidence thus supports the superior court's finding that Hinton aided and abetted, with the intent to kill, the murder and attempted murder.

## DISPOSITION

We affirm the trial court's order denying Hinton's petition under section 1172.6.


STONE, J.

We concur:


SEGAL, Acting P. J.


FEUER, J.